Filed 5/26/15  S.R. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| S.R.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Real Party in Interest. | F071144<br><br>(Super. Ct. No. 517176)<br><br><br>**OPINION** |

### THE COURT*

ORIGINAL PROCEEDING; petition for extraordinary writ review  Ann Q. Ameral, Judge.

Kathy Lynn Trosclair, for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*        Before Levy, Acting P.J., Kane, J. and Smith, J.

S.R. (mother) seeks extraordinary writ relief from a juvenile court's order denying her reunification services and setting a Welfare and Institutions Code section 366.26 hearing as to her one-year-old son Travis.[1]  Mother appears to argue there was insufficient evidence that she had an opiate addiction to warrant the juvenile court's exercise of jurisdiction over Travis or order denying her reunification services.  She also contends the Stanislaus County Community Services Agency (agency) did not provide her with reasonable services.  On review, we conclude mother's claims are meritless and deny her petition.

## PROCEDURAL AND FACTUAL HISTORY

Mother has a history of substance abuse issues, dating back to at least 2006, which have caused her to neglect and lose custody of her many children.  Between 2007 and 2011, she either failed to successfully complete or was denied family reunification services for her then six children and her parental rights to each of them were terminated.  Travis is mother's seventh child.

When Travis was approximately seven months old, the agency received a report that the child's father, who also had a history of substance abuse, was using drugs such as methamphetamine and marijuana in the home where the child lived.  Mother believed the report was false.

As of November 25, 2014, the father tested positive for methamphetamine and marijuana.  That day both he and mother agreed to participate in voluntary maintenance services to avoid Travis's removal.  However, they did not complete their family maintenance assessment as originally scheduled.

The father continued to test positive for methamphetamine and marijuana but would not participate in family maintenance services.  Mother meanwhile submitted to

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

drug tests, which were positive each time for benzodiazepine and opiates and once was also positive for oxycodone. The parents were also found to be under the influence while caring for Travis.

During the substance abuse evaluation, mother reported she suffered from back pain and severe arthritis. She produced a patient prescription summary for that year from a pharmacy in her hometown. The summary revealed seven different healthcare providers prescribed hydrocodone for mother on 20 occasions between April 14, 2014 and November 28, 2014. The summary did not include a prescription for oxycodone. The substance abuse assessor concluded mother was in denial of her opiate addiction.

The substance abuse assessor referred mother to a program called First Step. The First Step program included outpatient substance abuse treatment, a 12-step program, parenting classes and domestic violence services. The social worker provided mother with bus passes so that she would have transportation to and from First Step. However, as of mid-December mother had not attended the program.

Consequently, the agency detained Travis and initiated the underlying juvenile dependency proceedings. In its petition for juvenile court dependency jurisdiction, the agency alleged, pursuant to section 300, subdivision (b), there was a substantial risk Travis would suffer serious physical harm or illness by each parent's inability to provide regular care for him due to their substance abuse and also, in mother's case, her intellectual limitations. The agency detailed the parents' failure to participate in voluntary family maintenance services as agreed. The agency also alleged under section 300, subdivision (j) that Travis's siblings had been neglected as a result of the parents' substance abuse issues and there was a substantial risk that he too would be so neglected.

Between December 2014 when the agency filed its petition and March 2015 when the juvenile court conducted its combined jurisdictional and dispositional hearing in the case, the agency offered each parent services to address their respective issues, including substance abuse. The father, however, remained unwilling to participate in recommended

3.

services.  Mother, who started the First Step program after Travis was detained, stopped attending services altogether at First Step by mid-January 2015.

Mother claimed she would participate in substance abuse services in her hometown, not in Modesto where First Step was located.  The assessor, who conducted mother's substance abuse evaluation, offered mother a bed at Redwoods, a clean and sober living facility that would enable mother to still participate in First Step services.  However, mother refused.  The assessor did not recommend the substance abuse services available in mother's hometown.  The agency advised mother it could not refer her to the program in her hometown and would not approve her participation in that program.  The agency did give mother a referral for parenting education and domestic violence prevention through Sierra Vista Child and Family Services.  Mother did not begin services at Sierra Vista.  According to the agency social worker, mother still did not understand the severity of her misuse of prescription medication or see a concern with the father's methamphetamine use.

As a result, the agency recommended that the juvenile court exercise its dependency jurisdiction over Travis, adjudge him a dependent child and remove the child from parental custody.  The agency also recommended that the juvenile court deny the parents reunification services under section 361.5, subdivision (b)(10) and (11).  In mother's case specifically:  the court had ordered termination of reunification services for Travis's siblings because she failed to reunify with them after they were formally removed from her custody and she had not subsequently made a reasonable effort to treat the problems that led to the siblings' removal (§ 361.5, subd. (b)(10)); and her parental rights over Travis's siblings had been permanently severed and she had not subsequently made a reasonable effort to treat the problems that led to the siblings' removal (§ 361.5, subd. (b)(11)).

At a combined jurisdictional and dispositional hearing in March 2015, mother testified.  She was first questioned about what services she had participated in since the

latest order terminating her parental rights issued in 2011. She testified she did not participate in any sort of substance abuse program except for the First Step program between December 2014 and the first part of January 2015. While in that program, she attended two weeks of 12-step meetings. While she was pregnant with and after she gave birth to Travis, mother also attended four months out of a year-long parenting program. The classes she did attend involved nutrition and how to care for a child.

Mother stopped participating in services at First Step in January 2015 because she "was working on getting it transferred to [her hometown];" services at First Step were "time-consuming." By "time-consuming" mother meant she had "no time to do anything really" when she returned home from First Step. Mother admitted her substance abuse assessor did not recommend transferring services to mother's hometown.

Mother admitted the social worker referred her to Sierra Vista for services but she was not participating because she claimed she had been sick. It had been a month and a half since she had participated in any services.

Mother agreed she had a history of substance abuse. However, she did not believe she had a current drug abuse problem. Previously, her drug of choice was marijuana, but she stopped using marijuana two years ago. She did admit, however, to using marijuana in October 2014.

Currently, she was taking two prescription medicines: lorazepam for anxiety and hydrocodone for back problems and arthritis. She had been taking the hydrocodone for four years. A primary care physician whom she could not identify prescribed it. Mother added she went to a medical clinic and it was not always the same prescribing doctor. She admitted approximately seven different doctors prescribed the hydrocodone.

According to mother, her hydrocodone prescription was for three pills a day. She testified that since April 2014 she did not take more than prescribed.

Mother did not believe she abused her prescription medication or had a drug problem. Mother repeatedly denied and admitted that she had been offered residential drug treatment since December 2014. She refused to go.

Mother testified she only filled her prescriptions at one pharmacy. She later contradicted herself and testified when the one pharmacy was closed, she would go to another pharmacy. Although she provided a prescription summary from the "main" pharmacy she used, she did not provide such a summary from the other pharmacy for the substance abuse assessor.

Mother also contradicted herself about filling prescriptions for hydrocodone a few times at the second pharmacy in the past six months. In addition, mother gave conflicting answers regarding filling prescriptions in the last year for another pain reliever, tramadol, and seeing a physician in an emergency room a month before and after Travis's detention.

Mother did not remember all the doctors she had seen in the last year or what each of the doctors prescribed for her.

She believed she was still able to care for Travis while taking hydrocodone. She added she took one pill at a time every four to six hours.

Mother did not think she was in need of any services to help her parent Travis. She also did not feel she needed services when her other children were removed.

At the conclusion of the combined hearing, the court exercised its dependency jurisdiction over Travis pursuant to section 300, subdivisions (b) and (j), adjudged him a dependent child and removed him from parental custody. The court also denied each parent reunification services under section 361.5, subdivision (b)(10) and (11).

## DISCUSSION

## I.

Mother claims the juvenile court found she had an opiate addiction and that there was insufficient evidence to support such a finding. In her petition, she relates her

argument to both the court's exercise of jurisdiction and its order denying her reunification services. Mother's argument is faulty in several respects.

To begin, she misstates the record. The court did not find that she had an opiate addiction. In fact, it was the substance abuse assessor who in December 2014 opined mother had an opiate addiction. Notably, mother did not call the evaluator as a witness in an effort to discredit the evaluator's assessment. At most, the judge stated she believed mother was abusing prescription drugs and had substance abuse issues in her jurisdictional finding that Travis was a child described by section 300, subdivision (b).

If mother means to challenge the jurisdictional finding under section 300, subdivision (b), she overlooks the alternative grounds on which the court exercised its jurisdiction, namely the father's failure to protect based on his substance abuse (§ 300, subd. (b)) and the siblings' neglect (§ 300, subd. (j)). When a court makes multiple jurisdictional findings, on review we need only find support for one of them to uphold the court's exercise of jurisdiction. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.) In this case, mother makes no argument challenging the sufficiency of the evidence to support the alternative grounds for dependency jurisdiction. Thus, she has arguably forfeited her argument over the court's jurisdiction.

In any event, mother's sufficiency of the evidence argument is meritless. It was uncontroverted that she had a history of substance abuse issues, dating back to at least 2006, which have caused her to neglect and lose custody of six children. When she was granted reunification services on more than one occasion, she failed to reunify. Since the latest order terminating parental rights in 2011, she admittedly did not participate in any sort of substance abuse program except for the First Step program between December 2014 and the first part of January 2015. And she dropped out of that program before she could make any meaningful progress. In the interim, she was testing positive for opiates and in the undisputed opinion of the substance abuse assessor was in denial as to an opiate addiction.

Ignoring this record, mother concentrates instead on the inferences she draws from the pharmacy prescription summary she provided the substance abuse assessor in December 2014. Mother claims if one were to calculate, based on the pharmacy prescription summary, the span of days over which she was prescribed hydrocodone and divide it by the total number of pills she was prescribed, it would show she had less than four pills for each day. She adds if she took one pill every six to eight hours, the amount of pills she had prescriptions for was reasonable, not evidence of addiction.

This is one way in which the prescription summary could be interpreted although it relies on supposition. Also, mother's approach ignores the rule of law that we indulge all legitimate inferences in favor of upholding the court's decision, if possible. (*In re Laura F.* (1983) 33 Cal.3d 826, 833.)

The summary reveals one pharmacy filled 20 hydrocodone prescriptions for mother from seven different medical providers, ranging from physician's assistants, nurse practitioners to physicians, over a seven-month period. While mother argues in terms of averages, the summary reveals that sometimes the prescriptions were written very close in time compared to mother's hypothetical of average daily use. Also, the summary reveals in one two-day period mother obtained one hydrocodone prescription from one provider and one prescription for another narcotic pain reliever, tramadol, from another medical provider. Further, mother ignores her own admission that this was not the only pharmacy she visited in 2014 or 2015 to fill her prescriptions.

Mother suggests that the number of the providers may not have been an indicia of doctor shopping if they were members of the same office practice or clinic. In this regard, she criticizes the agency for not investigating whether her supposition was accurate. However, mother was in the best position to know if all the providers were from the same practice. However, she never offered such testimony.

Mother also ignores other evidence. For instance, there was her positive drug test in December 2014 for oxycodone and the lack of a prescription for the drug. There was

8.

also the evidence that she was found under the influence while Travis was in her care and the drug assessment that mother needed outpatient drug treatment.

Based on the record before us as summarized above, the juvenile court could properly find in these proceedings that mother had a substance abuse problem.

## II.

Mother next claims the juvenile court made a reasonable services finding under section 366.21, subdivision (f), which was not supported by substantial evidence. Again, mother's argument is flawed.

The court neither made a finding that the agency provided mother with reasonable services to overcome the problems that led to Travis's initial removal nor did it have to make such a finding. The law requires a reasonable services finding at review hearings held 6, 12 and 18 months after the initial dispositional hearing when a court orders reunification services. (§ 366.21, subds. (e) & (f); § 366.22, subd. (a).) Here, the court denied the parents reunification services at the dispositional hearing.

At the dispositional hearing, the court does have to make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the child from his home. (§ 361, subd. (d).) In this case, the court made such a finding. To the extent mother means to challenge the sufficiency of the evidence to support the reasonable efforts finding, we are not persuaded.

Mother complains that the agency should have accommodated her request to move services to her hometown. In so doing, she presumes her request was a reasonable one. The record, however, establishes otherwise. Mother claimed receiving services at First Step was too "time-consuming," leaving her "no time to do anything really." Also, issues of fact and credibility are matters for the superior court alone. (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860.

In addition, it was undisputed that the substance abuse assessor could not recommend the services in mother's hometown as a reasonable substitute. Mother also

9.

minimizes the agency's showing that the assessor offered mother a bed at a facility in the same community as First Step. She further ignores the evidence that the social worker offered mother a referral for services at Sierra Vista, of which mother did not take advantage. Finally, we note we may not reweigh or express an independent judgment on the evidence, before the trier of fact. (*In re Laura F., supra,* 33 Cal.3d 826, 833.)

We therefore conclude there was substantial evidence to support the court's reasonable efforts finding.

## III.

Last, mother appears to argue that the agency did not make reunification and family preservation a priority for her and Travis. Our review pertains, however, to the court's rulings that resulted in the setting of a section 366.26 hearing, not the agency's actions. (§ 366.26, subd. (*l*); *In re Anthony B*. (1999) 72 Cal.App.4th 1017, 1022.) In addition, as discussed above, we have concluded there was sufficient evidence to support the court's finding that the agency made reasonable efforts to prevent or eliminate the need for removal of the child from his home. (§ 361, subd. (d).)

To the extent mother means to contend she should have received reunification services as part of the court's disposition, we conclude there was substantial evidence to support the court's findings pursuant to section 361.5, subdivision (b)(10) and (11) to warrant a denial of services. It was undisputed that the court had ordered termination of reunification services for Travis's siblings because mother failed to reunify with them after they were formally removed from her custody and her parental rights over Travis's siblings had been permanently severed. Also, by mother's own testimony, there was clear and convincing evidence that she had not subsequently made a reasonable effort to treat the problems, most notably substance abuse, that led to the siblings' removal. At most, she participated in First Step services between mid-December 2014 and mid-January 2015. Remarkably, she did not believe she needed those or any other services. Therefore, the court could properly conclude mother did not make a subsequent

10.

reasonable effort to treat her substance abuse issues that led to the siblings' removal for purposes of section 361.5, subdivision (b)(10) and (11).

The court could have still ordered services for mother, but only if she produced clear and convincing evidence that reunification was in Travis's best interests. (§ 361.5, subd. (c); *In re Ethan N.* (2004) 122 Cal.App.4th 55, 64.) Mother, however, introduced no such affirmative evidence at the dispositional hearing. Thus, we conclude the court did not err by denying mother reunification services and setting the section 366.26 hearing to select and implement a permanent plan for Travis.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is immediately final as to this court.

11.